thereof be held liable to respond in damages for the difference between the value of the property at the time he takes it and what it subsequently brings to satisfy such prior liens.

[2] It is true that in an action to set aside a fraudulent conveyance a court of equity may award a money judgment against a fraudulent grantee, provided he has, by some act of his own, depreciated the value or by sale put it out of his power to reconvey. In such case the judgment may be either for the value of the property at the time of the conveyance, or for the proceeds received by the grantee when he disposed of it. Valentine v. Richardt, 126 N. Y. 272, 27 N. E. 255; Hamilton National Bank v. Halsted, 134 N. Y. 520, 31 N. E. 900, 30 Am. St. Rep. 693; Decker v. Decker, 108 N. Y. 128, 15 N. E. 307; Skillin v. Maibrunn, 75 App. Div. 588, 78 N. Y. Supp. 436, affirmed 176 N. Y. 588, 68 N. E. 1124.

In the case before us the bank did nothing to depreciate the value of the property covered by the conveyance to Rush, nor was the sale under the mortgage foreclosure in any way attributable to it. Obviously, under such circumstances, a money judgment against it is improper. Wasey v. Holbrook, 141 App. Div. 336, 125 N. Y. Supp. 1087, affirmed 206 N. Y. 708, 99 N. E. 1119; Hamilton National Bank v. Halsted, supra; Loos v. Wilkinson, 113 N. Y. 485, 21 N. E. 392, 4 L. R. A. 353, 10 Am. St. Rep. 495; Dunphy v. Kleinschmidt, 78 U. S. (11 Wall.) 610, 20 L. Ed. 223; Hosmer v. Tiffany, 124 App. Div. 287, 108 N. Y. Supp. 943. It got nothing by the conveyance, and therefore there is nothing for which it can account.

[3] I am also unable to see how the plaintiff is in a position to maintain the action; even if it be assumed that the bank did receive something of value. The action is brought, not on behalf of the plaintiff and other composition creditors similarly situated, but solely for the benefit of the plaintiff. He seeks to set aside the conveyance on the ground that the bank received a preference over the other creditors who entered into the agreement, and yet he is endeavoring to do the same thing by a judgment of the court.

On both grounds, therefore, I am of the opinion the judgment appealed from should be reversed, with costs, and the complaint dismissed, with costs. All concur.

---

### In re EDELMEYER.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

1. EXECUTORS AND ADMINISTRATORS (§ 59*)—MANAGEMENT OF ESTATE—LIABILITY.

An executor who in proceedings to settle his account testifies that a horse bought by testator belonged to a corporation and was bought for it, and who shows that he has full knowledge of the facts, cannot, when uncontradicted, be surcharged for the value of the horse.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1875; Dec. Dig. § 59.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. EXECUTORS AND ADMINISTRATORS (§ 105*)—MANAGEMENT OF ESTATE—LIA-
BILITY.

Where testator mingled in his account in a bank his own funds with those of a corporation, the executor enumerating the items of deposit belonging to the corporation was liable only for the balance of the deposit.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 399; Dec. Dig. § 105.*]

3. EXECUTORS AND ADMINISTRATORS (§ 131*)—MANAGEMENT· OF ESTATE—LIA-
BILITY.

Where some of the heirs of testator devising real estate to his executor in trust to pay the income released the executor from liability for rent for premises occupied by them, the executor cited to account must be charged with the rent which he should have collected, but must be credited on the same accounting with the amount thereof for equal division between the heirs occupying the premises.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 541–544; Dec. Dig. § 131.*]

4. EXECUTORS AND ADMINISTRATORS (§ 487*)—MANAGEMENT OF ESTATE—COM-
PENSATION.

Where an executor did not endeavor to perpetrate any fraud on the estate, though his system of keeping vouchers was confusing and unbusinesslike, and his mistakes were not deliberate, and he was not responsible for the excessive expense of a reference in proceedings to account, he was properly allowed compensation, and the expense was properly charged to the estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2257–2266; Dec. Dig. § 487.*]

Appeal from Order of Surrogate, New York County.

In the matter of the judicial settlement of the account of Walter S. Edelmeyer, as executor and trustee of John H. Edelmeyer, deceased. From a decree settling the account, the executor appeals. Modified and affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, DOWLING, and HOTCHKISS, JJ.

William J. Martin, of New York City, for appellant.
Thomas W. Churchill, of New York City, for respondent.

DOWLING, J. John H. Edelmeyer died August 21, 1907, leaving his entire estate to his executors, in trust to pay the income therefrom to his widow, Emily C., for life, and upon her death to divide the principal of the trust fund equally among the surviving children and the issue of deceased children, who were to take per stirpes, and not per capita. Walter S. Edelmeyer, one of the sons, alone qualified as executor, the executrix named in the will having renounced. The widow died March 10, 1910. The executor was cited to render his account, which he did pursuant to order of the Surrogate's Court. Some 20 objections having been filed thereto, the matter was sent to a referee. Eleven months have elapsed between the commencement and the closing of taking testimony at a large expense in fees, as the result of which only three items of surcharge upon the debit side of the account were sustained. From these the present appeal is taken.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

From the credit side of his account were deducted by the referee items aggregating $3,314.78, of which $2,093.80 was the amount of a credit erroneousiy appearing upon both the executor's and trustee's accounting; $250 was a fee paid his attorneys after the period covered by his account; $660.98 was for a discrepancy in coal bills; and $310 represented errors in charges as between the two accounts and discrepancies between vouchers and credits.

[1] The first surcharge questioned by this appeal is for the value of a horse called "Prince." The executor was improperly charged therewith. His testimony as to the ownership of the horse was the sole evidence thereupon. The referee relies upon one line of evidence "John H. Edelmeyer bought him," which is separated from the preceding and following testimony, which affirmatively shows that the horse belonged to Edelmeyer & Morgan Hod Elevator Company, a corporation, that it was bought for them, worked in their business, and had always been their property. This was directly sworn to by the executor, who had full knowledge of the details of his father's business as well as that of the corporation. This surcharge was erroneous, and should be set aside.

[2] The second surcharge is the difference between the total amount of the decedent's deposit in the Corn Exchange Bank, $1,271.58, and the sum of $591.66 thereof, which the executor claimed to be the property of the decedent. It appears without dispute that decedent mingled in this account his own funds with those of the corporation and the executor enumerated the items of deposit which he swore positively belonged to the corporation, giving the sources thereof. This evidence was in no way attacked, and the surcharge was therefore improper.

[3] The third surcharge is for rent which should have been collected for premises 226 West Seventy-First street, which had been occupied by certain of the heirs under an agreement between them whereby they released the executor from liability arising thereunder. This surcharge was proper, but the executor is entitled to credit against same, for the same amount, to be divided equally between the heirs who occupied the premises, released the executor from all liability for rent thereunder, and signed the agreement which is in evidence herein.

The respondent's reply to this is that the charge over should be made in a subsequent accounting; but the agreement is in evidence, the facts are undisputed, and, if the executor is to be charged for not collecting the rents, it should be charged back against those who assumed to use the house and released him from liability for their action and his inaction.

[4] It thus appears that the executor is not surcharged with any receipts whatever, and his surcharge of disbursements is $3,300, out of an estate of $87,000. Of this as before stated, $2,093 is a mere bookkeeping entry and $250 is for payment of legal services made after the accounting had been filed. The executor has not been proved guilty of such fraud or misconduct as justified the imposition of the costs of the reference on him personally, or the loss of his commis-

sions. While his system of keeping his vouchers was confusing and unbusinesslike, it does not appear that he was endeavoring to perpetrate any fraud on the estate, or that his mistakes were deliberate. Nor does it clearly appear that he was responsible for the long drawnout reference or its excessive expense. The decree appealed from will be modified by striking out the surcharges of the horse "Prince" and of the difference in the bank deposit; by charging the expenses of the reference and the costs of the respondent to the estate and not to the executor personally; by striking out the provision that the executor and trustee "has grossly mismanaged the estate, in effect converted a part of the estate to his own use, keeping improper accounts and subjecting the parties interested to great difficulty and expense to unravel them and that the proceedings herein have been prolonged and delayed through the neglect of the executor and his counsel in charge of these proceedings"; and by allowing the executor his commissions and costs upon the accounting.

As so modified, it will be affirmed, with costs to both parties, payable out of the estate. All concur.